CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

September 30, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JAMESON JAMES WOOD, Plaintiff, | ) | Civil Action No. 7:23-cv-00636 |
| v. | ) | |
| D. FELTS, *et al.*, Defendant. | ) | By: Elizabeth K. Dillon, Chief United States District Judge |

**MEMORANDUM OPINION**

In this 42 U.S.C. § 1983 action, Jameson James Wood, acting pro se, alleges violations of his federal statutory and constitutional rights due to the denial of religious materials at River North Correctional Center (RNCC). The defendants in this matter—D. Felts, David Anderson, Lisa Hernandez, H. Sharpe, and Rodney Younce—filed a motion for summary judgment. (Dkt. No. 67.) Wood filed a response to defendants' motion and various exhibits to support his opposition. (Dkt. Nos. 89, 89-1, 89-2, 89-3, 89-4, 94, 95.) Wood also filed a motion to voluntarily dismiss, with prejudice, his claims against defendants Hernandez and Younce. (Dkt. No. 90.)

For the reasons stated below, plaintiff's motion to dismiss the claims against Hernandez and Younce will be granted. The motion for summary judgment by the remaining defendants will be denied.

I. BACKGROUND

**A. Plaintiff's Second Amended Complaint**

In an order dated March 24, 2025, the court granted Wood leave to file a second amended complaint. (Dkt. No. 51.) The second amended complaint is verified and alleges as follows. (Dkt. No. 52.)

D. Felts is a correctional officer employed at RNCC. David Anderson was the RNCC Warden at the times relevant to this lawsuit. Harold Sharpe was a correctional major and the Chief of Security at RNCC. He was generally responsible for the supervision and discipline of correctional staff at RNCC. Sharpe is now the Assistant Warden at RNCC. Rodney Younce became the Warden at RNCC immediately after Anderson. Lisa Hernandez was the Western Regional Administrator for the Virginia Department of Corrections and was responsible for reviewing and answering Level II grievances submitted to the Western Region Office. (Second Am. Compl. ¶¶ 4–8.)

Wood arrived at RNCC on April 5, 2023. (*Id.* ¶ 11.) His personal property was searched and returned to him on April 11, 2023, by Felts. Felts withheld certain items deemed unauthorized, excessive, or altered. (*Id.* ¶ 12.) Felts provided a “Notice of Confiscation of Property” form that plaintiff used to grieve the confiscation. (*Id.* ¶ 13.)

Among the items withheld was a brown, leather journal used by Wood for religious study and prayer. (*Id.* ¶ 14.) Wood attempted to speak with Felts about the journal being returned. Plaintiff then utilized the Offender Grievance Procedure. (*Id.* ¶ 15.) Warden Anderson reviewed the grievance and made a finding that it was unfounded. (*Id.* ¶ 16.) This finding was upheld on appeal. (*Id.* ¶¶ 17–18.) Wood wrote several facility requests and spoke with defendants about the issue but could not secure the return of the confiscated journal. (*Id.* ¶¶ 19–24.)

Wood alleges that defendants’ actions burdened his religious exercise and violated his right to freedom of speech. (Second Am. Compl. ¶¶ 25–52.) Wood alleges that he “received religious instruction from the unique and irreplaceable contents of the confiscated journal.” (*Id.* ¶ 27.) Included in the journal were instructions on fasting, prayer, spiritual warfare, holiness, righteousness, and other tenets of the Christian faith. (*Id.* ¶ 28.) The journal also included

religious literature and newspaper articles from the "Sword of the Lord" newspaper, published bi-weekly from Murfreesboro, Tennessee, a Christian, faith-based newspaper that provides instruction and encouragement for daily observance. (*Id.* ¶¶ 29–30.) Another guide in the journal was called "Moments With the Book," which became "irreplaceable" because the publisher declined to send further guides to inmates at the Virginia Department of Corrections. (*Id.* ¶ 31.) Finally, the journal included a daily Bible reading schedule created by Wood and hand-written in the journal. "Without the daily guide, plaintiff has been unable to grow spiritually and has become stagnated. The guide included specific Bible verses and Scripture passages to read twice daily for each day of the calendar year." (*Id.* ¶ 32.)

Plaintiff requests a declaratory judgment that the confiscation of the journal created a substantial burden on the exercise of his religion in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). (Second Am. Compl., Relief Requested.) Wood also requests an injunction ordering defendants to arrange for the journal to be returned to him and to place "an alert or notice in the VADOC CORIS system, and the property inventory record for the plaintiff that the religious journal is not to be confiscated except for explicitly written and documented security concerns." Finally, plaintiff requests nominal damages against each defendant, $1,500 in punitive damages each against Felts and Anderson, $1,000 in punitive damages against Sharpe, and $500 each against Younce and Hernandez. (*See id.*)

**B. Facts in Support of Motion for Summary Judgment**

Defendants filed an affidavit by D. Felts in support of their motion for summary judgment. (Dkt. Nos. 67-1, 70.) Felts states that Wood was transferred to RNCC from Keen

Mountain Correctional Center on April 5, 2023. (Felts Aff. ¶ 4.) RNCC is a Security Level 4 facility. (*Id.*)

Upon his arrival, personal property staff conducted an inventory of Wood's property. (*Id.*) Items were confiscated because they exceeded the permitted amount, were altered, or were unauthorized. (*Id.*, Encl. A.) The inventory sheet reflects that Wood arrived at RNCC with 13 books and he was issued 12 books. (*Id.* ¶ 5.) Felts issued a "Notice of Confiscation of Property" form. (*Id.*, Encl. C.) According to the notice, a journal was among the items confiscated from Wood's property. (*Id.* ¶ 6.) Operating Procedure 802.1 does not allow inmates to possess journals. They may possess 13 books, 12 magazines, and one newspaper. (Felts Aff. ¶ 7, Encl. B.) Composition books suitable for journaling may be purchased from the institutional commissary. (*Id.* ¶ 8.)

On April 11, 2023, the unauthorized property was removed, including the journal, and plaintiff was provided with the "Notice of Confiscation of Property" form. Wood was advised that he could appeal the confiscation through the inmate grievance procedure within seven days of receipt of the notice. (Felts Aff. ¶ 9, Encl. C.)

When an inmate's property is confiscated, he is also provided with a property disposition form. Wood signed the disposition form on April 11, 2023. At this time, he was informed that the property would be stored up to 30 days pending disposal. Wood was also informed that property held after 30 days may be confiscated by the facility under OP 802.1 without compensation to the owner. Inmates may dispose of the property by mailing it out at their own expense, leaving it for a visitor to pick up, donating it to charity, or having it destroyed. Plaintiff took no action to dispose of the property. The confiscated material, including the journal, was destroyed on September 25, 2023. (Felt Aff. ¶ 10, Encl. D.)

Operating Procedure 841.3 establishes protocols for providing reasonable opportunities to inmates to pursue religious beliefs within VADOC facilities. (*See* Felts Aff. ¶ 12, Encl. F.) The procedure sets forth a list of approved religious items. (*See id.*, Attachment 6.) Journals are not included as an approved item. A hardcover book called Books of Shadows has blank pages for writing and is on the list of approved religious items. It can be purchased through the commissary and would be included with the total number of books permitted for inmate possession.

**C. Plaintiff's Response to Motion for Summary Judgment**

In his response to the motion for summary judgment, plaintiff has submitted a statement of disputed factual issues. (Dkt. No. 89-1.) Wood states that he deems the confiscated item to be a book pursuant to OP 803.2, not a journal. Wood further states that he cannot use a Book of Shadows because it is associated with witchcraft in violation of his religious beliefs. Wood possessed the confiscated book at two prior VADOC facilities of higher or equal security level before arriving at RNCC in April 2023. Anderson and Sharpe each stated to plaintiff that they would examine and inspect the journal prior to its destruction. (*See id.*)

In an affidavit, Wood states that he was forced to sign the "Confiscation Form" under duress by Felts, who stated that if he did not sign, Wood would not receive the remainder of his personal property. (Dkt. No. 89-2, Ex. OP-2, Wood Aff. ¶ 3.) Wood was also forced to sign the Property Disposition Form as a stipulation to being allowed to receive his remaining property items. Wood made repeated verbal requests to Felts, Sharpe, and Anderson that he be allowed to make copies of the journal to preserve it. Felts did not give Wood the opportunity to take action to properly dispose of the unauthorized property prior to its destruction. (*Id.* ¶¶ 4–6.)

Wood used the term journal to refer to the confiscated item because that was how it was first described by Felts on the Notice of Confiscation Form and Property Disposition Form. Wood considers the journal to be a book and religious text. He used it in that capacity for keeping a record of his spiritual experiences, reflections, and storage for various newspaper clippings and columns related to his Christian faith. Notes from Bible studies were also in the book, written in the margins and blank pages as Bible companion notes. (Wood Aff. ¶¶ 7–8.)

Wood explains that he received the journal when he was housed at Sussex I State Prison. It was received by property officers at that facility and issued to him in accordance with OP 803.2. It was classified as a book under the definition of a publication. Wood was transferred to Sussex to Keen Mountain and then to RNCC with a total of 13 books, which included the book/journal in dispute. (*Id.* ¶¶ 9–10.)

II. ANALYSIS

**A. Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). When ruling on a summary judgment motion, the court should consider the parties' pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Celotex Corp.*, 477 U.S. at 322. "The nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the

mere existence of a scintilla of evidence." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 783 (4th Cir. 2021) (quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)).

**B. RLUIPA Claim**

Section 3 of RLUIPA governs restrictions on an institutionalized person's religious exercise by state or local governments. RLUIPA provides as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The Act defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7)(A). A substantial burden "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, or forces a person to choose between following the precepts of his religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of [his] religion on the other hand." *Smith v. Ozmint*, 578 F.3d 246, 251 (4th Cir. 2009). Courts may "not judge the significance of the particular belief or practice in question." *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006).

Plaintiff bears the initial burden of proving that defendants' actions substantially burden his sincere religious exercise. *Holt v. Hobbs*, 574 U.S. 352, 361 (2015). If plaintiff satisfies this requirement, then defendant must demonstrate that such substantial burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering such interest. *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 99–100 (4th Cir. 2013).

The court finds that defendants have not shown that they are entitled to judgment as a matter of law. Instead, genuine disputes of material fact preclude summary judgment. Woods has shown a genuine dispute of fact regarding whether the confiscation of his journal substantially burdened the sincere exercise of his religion. In particular, the court notes Wood's uncontested and sworn assertion that the contents of the journal were "irreplaceable" for purposes of prayer and other tenets of his Christianity. (*See* Second Am. Compl. ¶¶ 27–28.) Wood alleges that he "received religious instruction from the unique and irreplaceable contents of the confiscated journal." (*Id.* ¶ 27.) Included in the journal were instructions on fasting, prayer, spiritual warfare, holiness, righteousness, and other tenets of the Christian faith. (*Id.* ¶ 28.) "Without the daily guide, plaintiff has been unable to grow spiritually and has become stagnated. The guide included specific Bible verses and Scripture passages to read twice daily for each day of the calendar year." (*Id.* ¶ 32.)

Further, a genuine dispute of material fact exists as to whether there is a legitimate penological interest for the personal property limits defendants enforced against Wood. Defendants provide no information to show that the journal is a security risk. Woods is allowed to purchase and possess a composition book from the VDOC for journaling but is not allowed to keep another journal that he possessed at other facilities prior to his arrival at RNCC. No information is provided regarding the difference in security risk between the journal Wood's had and a composition book used as a journal. Moreover, if the journal was considered a book, then confiscating the journal may not have been the least restrictive means of enforcing the limit on books because Wood was not offered the option of keeping the journal at the expense of another book.

For these reasons, the court finds that there are issues of fact which preclude defendants' request for summary judgment on plaintiff's RLUIPA claim.

**C. First Amendment Claim**

Under the free exercise clause of the First Amendment to the United States Constitution, made applicable to the states under the Fourteenth Amendment, a prisoner's right to practice his religion may only be restricted upon the showing that such restriction is reasonably related to a legitimate penological interest. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). Like the RLUIPA analysis, the court must first determine that plaintiff "(1) holds a sincere religious belief and (2) that his religious practice has been substantially burdened by the prison policy or practice." *Firewalker-Fields v. Lee*, 58 F.4th 104, 114 (4th Cir. 2023).

For the reasons detailed herein, there are issues of fact as to whether the confiscation of his journal substantially burdened the exercise of his religion and whether the restriction was reasonably related to a legitimate penological interest. Thus, the court will deny summary judgment as to this claim.

**D. Personal Involvement**

Defendants Anderson and Sharpe argue that they are entitled to summary judgment because plaintiff does not allege their personal involvement in the alleged violations. Wood's verified complaint states that he wrote and spoke directly to Anderson and Sharpe about the confiscated journal and asked for their assistance in having the journal returned. (*See* Second Am. Compl. ¶¶ 19–23.) Defendants do not dispute these assertions. Defendants argue that plaintiff has not stated facts to support a supervisory liability claim, but the court disagrees. Wood's verified allegations create issues of fact on the elements of a supervisory liability claim, such as actual knowledge, deliberate indifference or tacit authorization, and a causal link to the

injury suffered by Wood. *See Johnson v. Robinette*, 105 F.4th 99, 123 (4th Cir. 2024) (describing elements of a § 1983 supervisory liability claim).

**E. Injunctive Relief**

Defendants argue that plaintiff's request for injunctive relief is moot because his journal has been destroyed. The court declines to strike or dismiss plaintiff's request for injunctive relief because there may be other forms of prospective relief that would be appropriate in this case. Wood has, for example, requested a declaratory judgment. *See Medigrow, LLC v. Natalie M. LaPrade Med. Cannabis Comm'n*, 487 F. Supp. 3d 364, 372 (D. Md. 2020) ("Under the *Ex Parte Young* exception, private litigants may sue state officials for injunctive relief or seek a declaratory judgment, so long as the relief sought is prospective in nature and remedies an ongoing harm.") (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Wood has also requested an order that religious property not be confiscated except for documented security concerns. (Second Am. Compl., Relief Requested.)

III. CONCLUSION

Based on the foregoing, the court will issue an order granting plaintiff's motion to dismiss defendants Hernandez and Younce but denying summary judgment as requested by the remaining defendants.

Entered: September 30, 2026.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge